UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DALE MCMANN and JANICE MCMANN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORP., et al.,<br><br>Defendants. | NO. 2:14-cv-00281-RSM<br><br>ORDER DENYING MOTION TO REMAND |

This matter comes before the Court on Motion for Expedited Remand by Plaintiffs Dale and Janice McMann. Dkt. # 37. Having considered the pleadings filed in support of and in opposition to the Motion and remainder of the record, the Court denies the Motion to Remand for the reasons stated herein.

## **Background**

Plaintiffs Dale and Janice McMann ("the McManns") filed the instant complaint against various Defendants for damages in King County Superior Court for the State of Washington on January 21, 2014. Compl., Dkt. # 2, Ex. 1. Plaintiffs allege that Dale McMann developed malignant mesothelioma as a result of his exposure to asbestos and asbestos-containing products mined, manufactured, and produced by Defendants. *Id.* at p. 2. These exposures allegedly occurred between 1969 and 1979 while Mr. McMann served as a U.S. Navy machinist repairman aboard the *USS Jason*, the *USS Southerland*, and at the Puget Sound

ORDER DENYING MOTION TO REMAND - 1

Naval Shipyard. *Id.* Plaintiffs claim liability on various state law grounds, including product liability (RCW 7.72 *et seq.*), negligence, conspiracy, spoliation, strict product liability, and premises liability. They have also included in their complaint a disclaimer of any claims subject to a government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

Defendant CBS Corporation ("Westinghouse") timely removed the matter to this Court on February 26, 2014, under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Dkt. # 1. The following day, Defendant Crane Co. ("Crane") filed a Joinder in Notice of Removal, supported by Affidavits of Crane Vice-President Anthony D. Pantaleoni, Rear Admiral David P. Sargent, Jr., and occupational medicine specialist Samuel A. Forman, MD. *See* Dkt. # 3, Ex's. 2-32.

Both Westinghouse and Crane assert that Plaintiffs' allegations that Mr. McMann was exposed to asbestos-containing products while working in the Navy give rise to the federal defense of government contractor immunity. Westinghouse contends that it "manufactured various equipment for use on Navy ships pursuant to contracts and specifications executed and controlled by the U.S. Navy…." Dkt. # 2-2, ¶ 2. Crane similarly asserts that the Navy's specifications governed the design and construction of its products and the form and content of any labeling and warnings.  Dkt. # 3, p. 5; *Id.* at Ex. 2 (Pantaleoni Decl.), ¶¶ 4-6; Ex. 5 (Sargent Decl.), ¶¶ 23-32.  Removing Defendants contend that in the manufacture and sale of products and equipment for and to the U.S. Navy, they were thereby acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1), and that removal to a federal forum is therefore appropriate. *See* Dkt. # 2-2, ¶ 4; Dkt. # 3, pp. 2-3.

On March 28, 2014, Plaintiffs moved to remand the case to Superior Court on the grounds that Westinghouse and Crane have failed to produce evidence giving rise to federal jurisdiction. Dkt. # 37. Plaintiffs also premise remand on their Complaint's disclaimer of any claims subject to a government contractor defense under *Boyle*. *Id.* at p. 6. Plaintiffs attached

ORDER DENYING MOTION TO REMAND - 2

1  and incorporated by reference the arguments and evidence produced in *McMann v. Air &*

2  *Liquid Systems Corp.*, No. 3:13-cv-05721 BHS (W.D. Wash. 2013), a similar case brought by

3  Mr. McMann's brother and remanded to Superior Court. *See Id.* at p. 5.  Westinghouse and

4  Crane have both filed briefs in opposition to remand. *See* Dkt. ## 49, 50. With its Response,

5  Westinghouse substantiated its allegations with extensive testimonial and documentary

6  evidence, including affidavits from three individuals: James M. Gate, a former Westinghouse

7  employee, testifying about Navy control of the design and warnings on Westinghouse's

8  products (Dkt. # 50, Ex. A); United States Navy Rear Admiral Roger B. Horne, Jr., also

9  testifying that Westinghouse turbines were built according to Navy specifications and plans,

10 with warnings subject to the Navy's control (Dkt. # 50, Ex. B, ¶¶ 16-18, 20-22, 29, 34, 37(b));

11 and Samuel A. Forman, M.D., testifying to the Navy's evolving awareness of asbestos risks

12 (Dkt. # 50, Ex. F). Plaintiffs have not filed a reply.

### **Analysis**

14       A party seeking to remove an action from state to federal court may do so only if the

15 action is one over which the federal court possesses jurisdiction. 28 U.S.C. § 1441(a). A

16 defendant seeking to remove an action bears the burden of establishing that removal is proper.

17 *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). The federal officer removal statute, 28

18 U.S.C. § 1442(a)(1), provides for removal of civil actions commenced in State court against a

19 person acting under the authority of an officer of the United States "for any act under color of

20 such office." A party seeking removal pursuant to 28 U.S.C. § 1442(a)(1) "must demonstrate

21 that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its

22 actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can

23 assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251

24 (9th Cir. 2006). *See also Mesa v. California*, 489 U.S. 121, 124-25 (1989).

25       As an initial matter, Plaintiffs' attempt to disclaim federal removal jurisdiction over this
action must fail because federal jurisdiction under § 1442(a)(1) depends on Defendants'

1  defenses, not Plaintiffs' subjective characterization of the Complaint. Section 1442 is an

2  exception to the "well-pleaded complaint rule," under which, absent diversity, a defendant

3  must demonstrate that the case "arises under" federal law in order to remove it to federal court.

4  *Kircher v. Putnam Funds Trust*, 574 U.S. 633, 644 n. 12 (2006). Rather, "[u]nder the federal

5  officer removal statute, suits against federal officers may be removed despite the nonfederal

6  cast of the complaint; the federal-question element is met if the defense depends on federal

7  law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). In this way, the statute "promotes

8  litigating federal defenses in a federal forum so that 'the operations of the general government

9  [are not] arrested at the will of one of [the states]." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180

10 (11th Cir. 2012)(quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1879))(alterations in original);

11 *see also Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)(explaining that a "primary

12 purpose" of the removal statute was to ensure that "where federal officers can raise a colorable

13 defense arising out of their duty to enforce federal law," they "have such defenses litigated in

14 the federal courts"). The Court accordingly declines to give effect to the Complaints' waiver of

15 claims subject to a government contractor defense; if Defendants satisfy their burden of

16 proving the propriety of removal under § 1442(a)(1), Congress has assured them the right to

17 have their federal defenses tried in a federal forum.

18         The Court similarly disagrees with the rigorous standard of review urged by Plaintiffs.

19 Plaintiffs erroneously contend that the applicable removal statute must be construed strictly

20 with any jurisdictional doubts resolved in favor of remand. *See* Dkt. # 37, pp. 7, 9. Unlike

21 removals under 28 U.S.C. § 1441, the Supreme Court has mandated that § 1442(a)(1) is to be

22 given a "generous interpretation" and to be "liberally construed to give full effect to the

23 purposes for which [it was] enacted." *Durham*, 445 F.3d at 1252 (internal citation and

24 quotation omitted); *see also Leite v. Crane Co.*, 2014 WL 1646924, *5 (9th Cir.

25 2014)(recognizing "that defendants enjoy much broader removal rights under the federal

officer removal statute than they do under the general removal statute"). Thus, to successfully

ORDER DENYING MOTION TO REMAND - 4

invoke § 1442(a)(1), a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. Rather, where a motion for remand attacks the removing defendant's jurisdictional allegations, the defendant must merely "prove by a preponderance of the evidence" that its federal defense is "colorable." *Leite*, 2014 WL 1646924, at *5 (quoting *Acker*, 527 U.S. at 431).

In the instant matter, neither party contests that Defendants Westinghouse and Crane, as corporate entities, qualify as "persons" within the meaning of the statute. *See, e.g.*, *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999)(holding that corporate entities are "persons" under § 1442(a)(1)); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (11th Cir. 2012). Rather, the parties dispute whether Defendants have established the second two elements necessary for federal officer removal: a colorable federal defense, and a casual nexus between Plaintiffs' claims and Defendants' actions taken pursuant to the Navy's directions.

### A. Admissibility of Evidence

In support of remand, Plaintiffs also contend that Westinghouse was required to submit evidence establishing jurisdiction with its removal notice and that, having failed to do so, it is precluded from submitting evidence in opposition to Plaintiffs' motion for remand. Dkt. # 37, p. 3. The Court disagrees. The statute governing removal of civil actions does not require a defendant to attach jurisdictional evidence to its removal notice. *See* 28 U.S.C. § 1446. Rather, it tracks the language of Rule 8(a)(1), requiring the defendant to provide 'a short and plain statement of the grounds for removal.'" *Leite*, 2014 WL 1646924, at *3 (quoting 28 U.S.C. § 1446(a)). Accordingly, Plaintiffs' contention that Westinghouse's Notice of Removal was deficient because it was not accompanied by affidavits is meritless. *See, e.g.*, *Jarvis v. Roberts*, 489 F.Supp. 924, 926 (W.D. Tex. 1980)("Since Title 28 U.S.C. s. 1446 does not require affidavits by each defendant, this contention is frivolous."). In addition, courts routinely consider evidence submitted by defendants in opposition to a motion to remand. *See, e.g.*, *id.*;

*Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 949 (11th Cir. 2000)(holding that the "district court when necessary [may] consider post-removal evidence in assessing removal jurisdiction"); *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 772 (11th Cir. 2010)(reversing district court's decision to exclude evidence merely because it was submitted in response to remand motion). Indeed, the Ninth Circuit has recognized that defendants are required to produce competent proof when their § 1442 jurisdictional allegations are challenged. *Leite*, 2014 WL 1646924, at *3. As Plaintiffs do not object to the admissibility of Westinghouse's evidence on grounds other than the timing of its submission, the Court declines to exclude evidence submitted in opposition to Plaintiffs' motion to remand.

B.  **Colorable Federal Defense**

The sole federal defense asserted by Defendants is the government contractor defense, which operates to "protect[] contractors from tort liability that arises as a result of the contractor's compli[ance] with the specifications of a federal government contract.'" *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011)(quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)). The Supreme Court in *Boyle* developed the defense based on its recognition that "selection of the appropriate designs for military equipment to be used by our Armed Forces is assuredly a discretionary function" and that holding Government contractors liable under state law may therefore present a "significant conflict with federal policy" if not displaced. 487 U.S. at 511-12.

Plaintiffs assert that Westinghouse has failed to produce evidence sufficient to establish that it has a colorable federal defense based on its immunity as a government contractor pursuant to *Boyle*. Plaintiffs contend that "numerous District Courts in the Ninth Circuit have evaluated Defendants' evidence and found that the *Boyle* defense **is not colorable** in failure-to-warn asbestos claims," necessitating remand. *Id.* at p. 9 (emphasis in original). Crane and Westinghouse assert that the Court need not reach the question of the sufficiency of their government contractor defense as to Plaintiffs' failure-to-warn claim as Plaintiffs have also

ORDER DENYING MOTION TO REMAND - 6

1 asserted a use-of-asbestos claim for which Defendants clearly have a colorable federal defense.
2 *See* Dkt. # 49, pp. 2-3; Dkt. # 50, pp. 13-16.
3       As a preliminary matter, the Court must determine what kinds of claims Plaintiffs
4 allege. All parties acknowledge that Plaintiffs assert failure-to-warn claims against Defendants.
5 Westinghouse and Crane also contend that the Complaint states a use-of-asbestos claim based
6 on its allegation that, "[w]ith regard to the naval equipment manufacturers of pumps, turbines,
7 steam traps, and valves, these defendants designed, intended, incorporated into, and required
8 *the use of asbestos gaskets, packing, and insulation* in and on their equipment." Compl., at p. 3
9 (emphasis added). Plaintiffs do not contest, and the Court agrees, that the Complaint asserts a
10 use-of-asbestos claim on its face through the allegation that Defendants are liable because they
11 included asbestos in their products. *See Ruppel*, 701 F.3d at 1183 (concluding that a similarly
12 worded complaint plainly alleges liability based on the mere use of asbestos). Accordingly, the
13 entire action is removable if Defendants have a colorable defense as to either their failure-to-
14 warn or use-of-asbestos claims. *See Id.* at 1182; *National Audubon Soc.'y v. Dept. of Water &*
15 *Power*, 496 F.Supp. 499, 507 (E.D. Cal. 1980)("It is well settled that if one claim cognizable
16 under Section 1442 is present, the entire action is removed, regardless of the relationship
17 between the Section 1442 claim and the non-removable claims."); *Murphy v. Kodz*, 351 F.2d
18 163, 166 (9th Cir. 1965)("[A]bsent some statutory limitation, federal jurisdiction may be
19 exercised over non-federal facets of a case if there is first established jurisdiction based on a
20 substantial federal ingredient.").
21       As to Plaintiffs' use-of-asbestos claim, the Court finds that Westinghouse's and Crane's
22 affidavits establish a colorable federal defense. Under *Boyle*, liability for design defects cannot
23 be imposed on a military equipment vendor pursuant to state law when: (1) the federal
24 government approved "reasonably precise specifications" for the equipment, (2) the equipment
25 conformed to the specifications; and (3) the supplier warned the government "about the
dangers in the use of the equipment that were known to the supplier but not to the United

ORDER DENYING MOTION TO REMAND - 7

States." 487 U.S. at 512. With respect to the first element, Mr. Gate and Admiral Horne both testify that, at the time of the construction of the ships on which Mr. McMann worked, the Navy's design specifications ("MilSpecs") affirmatively required the use of asbestos-containing thermal insulation in or on population turbines and related equipment. *See, e.g*, Dkt. # 50, Ex. A, ¶¶ 7-8; Ex. B, ¶ 25 ("It was the Navy, not contract manufacturers, that required the use of asbestos thermal insulation with turbines intended for installation on Navy ships."). *See also* Dkt. # 3-2 (Pantaleoni Decl.), ¶ 5 (testifying that Crane Co.'s equipment manufactured for use on Navy vessels "was governed by an extensive set of federal standards and specifications," chiefly MilSpecs); Dkt. # 35 (Sargent Decl.), pp. 18-19 (detailing Navy design specifications requiring use of asbestos in thermal insulating materials). Westinghouse has corroborated this testimony by introducing relevant Navy MilSpecs from the period in question, which evidence precise design specifications requiring asbestos-containing thermal insulation. *See, e.g.*, *id.* at Ex. C, § S39-1(specifying use of asbestos in insulation materials).

Westinghouse's and Crane's affidavits similarly establish a colorable showing with respect to the second and third elements. Admiral Horne testifies that all turbines built for Navy vessels, including Westinghouse turbines, were manufactured according to specifications issued exclusively by the Navy. Dkt. # 50, Ex. B, ¶ 16. Mr. Gate similarly states that all turbine generators and related equipment supplied by Westinghouse was built in accordance with Navy specifications and approved by the Navy on this basis. *Id.* at Ex. A, ¶ 29. The affidavit of Mr. Pantaleoni, Crane's Vice-President, makes a similar showing with respect to compliance of equipment supplied by Crane. *See* Dkt. # 3-2, ¶ 6.

The third prong is satisfied by proof either that 1) the vendor lacked actual knowledge of the hazard or 2) the hazard was already known to the government. *Getz*, 654 F.3d at 865-66. Dr. Forman's affidavits, "supported by an adequate foundation based on his years of historical research," *Leite*, 2014 WL 1646924, at *5, make a colorable showing that the Navy knew at least as much about asbestos hazards as Westinghouse and Crane. Dr. Forman stated that the

Navy possessed knowledge of the hazards of asbestos as early as 1922 and deepened through extensive study of the health effects of asbestos exposure among Navy workers through the 1960s, prior to and during the period of Mr. McMann's exposure (Dkt. # 50, Ex. F, ¶¶ 20-35). Thus, there was no unknown danger about which Crane and Westinghouse could have informed the Navy. *See Leite*, 2014 WL 1646924, at * 5 (finding the third prong satisfied based on Dr. Forman's showing in a similar affidavit).

Westinghouse and Crane have accordingly proved by a preponderance of the evidence that their government contractor defense is "colorable," which is a sufficient showing at this stage to proceed with their federal defense to Plaintiffs' use-of-asbestos claims. *Acker*, 527 U.S. at 431; *Leite*, 2014 WL 1646924, at *5 (explaining that defendants need not prove that their "government contractor defense is in fact meritorious" at this stage of the proceedings). While the Court need not reach the question of the viability of a government contractor defense to Plaintiffs' failure-to-warn claim, the Court nonetheless finds that Defendants have established a colorable federal defense to this claim as well.

Contrary to Plaintiffs' objections, the Ninth Circuit has determined that a *Boyle* defense is available for failure-to-warn asbestos claims when the contractor shows that it "'acted in compliance with reasonably precise specifications imposed on it by the United States' in deciding whether 'to provide a warning.'" *Getz*, 654 F.3d at 866 (quoting *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996))(internal alteration omitted). Thus, to establish a government contractor defense in the context of Plaintiffs' failure-to-warn claims, removing Defendants must prove that: (1) the Navy exercised its discretion and approved warnings for their products, (2) Defendants provided the warnings required by the Navy, and (3) Defendants warned the Navy about any asbestos hazards that were known to them but not the Navy. *Leite*, 2014 WL 1646924, at *4 (citing *Getz*, 654 F.3d at 866).

Having already found the third prong satisfied, the Court determines that Westinghouse's and Crane's affidavits make a colorable showing with respect to the first two

ORDER DENYING MOTION TO REMAND - 9

elements. Mr. Gate and Admiral Horne both affirm that the Navy issued detailed specifications governing form and content of all warnings on equipment supplied to the military. *See* Dkt. # 50, Ex. A, ¶¶ 30, 31; *Id.* at Ex. B, ¶ 37(b). They further state that the Navy would not have permitted equipment manufacturers to include warnings beyond those specified and approved by the Navy. *Id; see also* Dkt. # 3-5 (Sargent Decl.), pp. 24-27 (detailing Navy control of warnings on and written materials accompanying supplied equipment). While Admiral Sargent and Mr. Gate opine that the Navy would not have permitted suppliers to place asbestos-related warnings on equipment through the 1960s (*Id.* at p. 27; Dkt. # 50, Ex. A., ¶ 31), the Court need not rely on this speculative testimony. Because the government contractor defense is not limited to "instances where the government forbids additional warning or dictates the precise contents of a warnings," Defendants "need not prove that the Navy would have forbidden [them] to issue asbestos warnings had [they] requested the Navy's approval," *Leite*, 2014 WL 1646924, at *4 (quoting *Getz*, 654 F.3d at 867). Rather, it is sufficient that Defendants have established that the Navy exercised its discretion to approve specific warnings and proscribe others. Defendants have further shown through competent testimony that all equipment they sold to the Navy complied with specifications regarding warnings. Admiral Horne, for instance, declares that the Navy did not permit any equipment manufacturers to supply turbines or insulation that did not expressly comply with Navy specifications regarding placement of warnings. Dkt. # 50, Ex. B, ¶ 37(b). Removing Defendants have accordingly satisfied their burden to prove by a preponderance of the evidence that their government contractor defense to Plaintiffs' failure-to-warn claim is colorable as well.

C. **Causal Nexus**

The causal nexus inquiry requires Defendants to show that the acts complained of were taken within the scope and course of its conduct "under color of [federal] office." 28 U.S.C. § 1442(a)(1); *see Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d. Cir. 2008). In other words, Defendants must show that "the acts for which they are being sued…occurred *because of* what

they were asked to do by the Government." *Id.* The Court credits Defendants' theory of the case when determining whether a causal nexus exists. *Acker*, 527 U.S. at 432; *Leite*, 2014 WL 1646924, at *5.

Such a causal nexus clearly exists here, as the acts that form the basis of Plaintiffs' claims – use of asbestos and failure to warn about asbestos-related hazards – are acts that Westinghouse and Crane contend they performed at the direction of the Navy and while performing their government-prescribed duties. *See Id.* As with respect to the federal defense prong, Defendants need not establish "an airtight case on the merits in order to show the required causal connection." *Acker*, 527 U.S. at 432. Rather, having made an adequate threshold showing on the basis of competent evidence, Defendants are entitled to have the federal – rather than state –courts determine whether the challenged acts were within or without the scope of their official duties.

## Conclusion

For the above stated reasons, the Court finds that Defendants have demonstrated that they properly removed this action pursuant to 28 U.S.C. §1442(a)(1). The Court accordingly ORDERS that Plaintiffs' Motion to Remand (Dkt. # 37) is DENIED.

DATED this 6 day of May 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE